# In the United States Court of Federal Claims

No. 14-02 C

(Filed January 26, 2015)

```
* * * * * * * * * * * * *      *
DELROY E. MILLER, JR.,        *
                              *
                  Plaintiff,  *
                              *
          v.                  *
                              *
THE UNITED STATES,            *
                              *
                 Defendant.   *
                              *
* * * * * * * * * * * * *      *
```

Military Pay; Jurisdiction for
Monetary Claim Related to
Promotion That Was Allegedly
Delayed Improperly; RCFC
12(b)(6); Remand Preferred to
Supplementation of the
Administrative Record.

*Cynthia A. Dill*, Portland, ME, for plaintiff.

*Meen Geu Oh*, United States Department of Justice, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Washington, DC, for defendant. *Major Nicole J. Fish*, United States Army Litigation Division, Fort Belvoir, VA, of counsel.

———————————————

## OPINION

**Bush**, *Senior Judge*.

This military pay case is before the court on defendant's motion to dismiss, or, in the alternative, motion for judgment upon the administrative record, filed under Rules 12(b)(1), 12(b)(6) and 52.1 of the Rules of the United States Court of

Federal Claims (RCFC).[1]  Defendant's motion has been fully briefed and is ripe for decision.  Plaintiff's pending motion to supplement the administrative record has also been fully briefed.  Oral argument was neither requested by the parties nor deemed necessary by the court.  For the reasons stated below, defendant's motion is granted in part and denied in part, and plaintiff's motion is denied as moot.

## BACKGROUND[2]

In this suit, plaintiff Delroy E. Miller, Jr. seeks a change in his military records and accompanying monetary relief.  Although now a major in the United States Army Reserves, he was serving as a captain at the time of the incidents which give rise to his suit; for this reason, the court will refer to plaintiff as Captain Miller or plaintiff throughout the background section of the opinion.  The court limits its discussion of background facts to those most essential to the resolution of defendant's dispositive motion and plaintiff's motion to supplement the administrative record.

## I.      Successful Career as an Officer

Captain Miller has had a long and successful career as an officer and he was not discharged as a result of the controversy examined here.  The overwhelming majority of his performance ratings (Officer Evaluation Reports (OERs), or similar reports) by superior officers, both before and after Captain Miller's assignment highlighted here, have been glowing.  *See* AR at 145-46, 156-57, 170-71, 177-78, 190-91, 200-01, 207-08, 212-13, 225-28, 271-72, 282-83, 320-21, 323-28, 333-34, 339-40, 345-46, 354-55.  He has received numerous commendations and has served his country in a number of settings including Afghanistan.  Compl. ¶¶ 3, 6.

## II.     Negative Performance Evaluation in Illinois

---

[1]/ Although the motion filed by defendant relies only on RCFC 12(b)(1) and RCFC 52.1, the government's reply brief references RCFC 12(b)(6) as well.  *See* Def.'s Reply at 2.

[2]/ The facts upon which the parties rely are undisputed unless otherwise noted.  The administrative record (AR) filed by defendant contains exhibits which are indexed, tabbed and consecutively paginated.  The exhibits attached to the complaint are not consecutively paginated; the court has supplied page numbers for multiple-page exhibits attached to the complaint.

Plaintiff's first command, as a first lieutenant, was in the U.S. Virgin Islands; he is a native of the Virgin Islands, and it was there that he entered the service.  AR at 49.  He received his promotion to captain on March 20, 2001.  *Id.* at 294.  His first command as a captain was of the 739th Engineer Company, which was part of the 88th Regional Support Command, known today as the 88th Regional Readiness Command; his company was located in Granite City, Illinois. This command assignment began in October 2002.  Compl. ¶¶ 8, 16; AR at 12.

According to Captain Miller, the 739th was in disastrous shape when he arrived:

> When Miller arrived at the 739th, he found a broken unit in need of massive reform and order.  Soldiers had deserted, supplies were not accounted for and the physical condition of the buildings, equipment, facilities and grounds were deplorable.  An investigation of the conditions of the unit concluded it was vastly unprepared, mismanaged and unfit.

Compl. ¶ 9.  He reported many problems to his superiors; eventually his reports were denigrated as "whining."  *Id.* ¶ 15.  Captain Miller characterizes these early months of his command as

> three months of documented attempts to address blatant disregard to Army regulations, maltreatment of soldiers and racial inequities, among other things[.]  [T]he 88th Regional Readiness Command ("RRC") appointed an investigation officer and a report of survey was completed.  [Although] [t]he final report of the RRC investigation was not shared with Miller, . . . he believes battalion commanders were faulted for their negligence.

*Id.* ¶¶ 16-17.

Captain Miller also championed the cause of a service-member who had been demoted prior to his arrival.  Compl. ¶¶ 11, 13.  Her restoration to rank was, however, held up by administrative delays at the battalion command level.  *Id.*

Captain Miller describes the excuses provided for the delays as "questionable." *Id.* ¶ 11. He eventually accompanied the service-member to the 88th Regional Readiness Command Inspector General's office "to address what appeared to be intentional stalling on the part of the battalion." *Id.* ¶ 13. His superiors wrote him an email a few days later which criticized him for focusing on the wrong things. AR at 56.

The 739th was ordered to mobilize to deploy to Iraq in late 2002. Compl. ¶ 12. This mobilization gave rise to a number of time-consuming tasks for Captain Miller. *Id.* ¶¶ 13, 15, 19-20, 24-25, 27. A key staffer in his command was re-assigned to a different unit in the midst of mobilization. *Id.* ¶ 24. At the same time, the battalion commander and group commander visited the 739th on January 22, 2003 and "took over Miller's formation." *Id.* ¶ 28. According to the complaint, Captain Miller's superiors used profanity and other derogatory comments to and about plaintiff in the presence of his soldiers. *Id.* ¶ 29.

The specific oral criticisms delivered on January 22, 2003 that are noted in the complaint include: (1) blaming Captain Miller "for the poor shape of the unit and its lack of readiness"; (2) accusing Captain Miller of not being "engaged"; and, (3) asking Captain Miller why he shouldn't be fired. Compl. ¶ 30. Captain Miller noted a difference the next day in how he was treated by his soldiers. *Id.* ¶ 33. Also the next day, January 23, 2003, plaintiff asked to speak to the battalion commander privately and said something to the effect of "Sir, I cannot work for you if you continue to disrespect me with profanity." *Id.* Captain Miller was relieved of his command that day, was ordered not to deploy to Iraq, and was ordered to report to a lesser-ranked officer in another unit in the area. *Id.* ¶¶ 34-35.

The administrative record contains one document which memorializes the January 2003 events described in the complaint – a negative OER, signed in August 2003 by Captain Miller's battalion commander and group commander. AR at 280-81. Plaintiff also asks the court to consider another document not contained in the administrative record – a "Revocation Order" dated January 22, 2003 which cancelled Captain Miller's deployment to Iraq. Compl. Ex. A. In essence, plaintiff alleges that the Revocation Order, dated January 22, 2003 (which predates the "I cannot work for you" statement uttered by Captain Miller on January 23, 2003) calls into question his superiors' stated rationale for

removing Captain Miller from his command.

The Revocation Order contains no rationale but merely revokes the mobilization order that would have sent Captain Miller to Iraq, by way of Fort Leonard, Illinois, on January 24, 2003. Compl. ¶ 23, Ex. A. Although plaintiff is on the distribution list for the Revocation Order, *id.* Ex. A, there is no evidence that plaintiff received the order or, for that matter, that the Revocation Order was ever considered in any subsequent appeal of his superiors' actions. Plaintiff alleges in a brief that seeks supplementation of the administrative record that the Revocation Order was not disclosed by the government until September 2013 when the Army responded to a Freedom of Information Act (FOIA) request from plaintiff's counsel. Pl.'s Supp. Reply at 1; AR at 1.

The OER rating Captain Miller's performance as commander of the 739th from June 29, 2002 until he was relieved of that command on January 23, 2003 is quite negative. His superiors' view of his prospects for continued service are gloomy: "No Command Assignment, No Staff Assignment, Not recommended for continued service in the Army." AR at 281. Captain Miller is faulted for numerous deficits: "lack of professional and moral obligation to duty"; "did not focus on the tasks necessary to prepare his company for deployment when it was alerted and mobilized"; "lack of loyalty to his entire chain of command"; "displayed poor judgment and an inability to make decisions"; "lack of interpersonal and managerial skills in coordinating actions of his officers and NCO's at the time of mobilization"; "could not initiate the required actions to mobilize the 739th Engineer Company"; "lack[] [of] leadership qualities necessary to lead soldiers into a combat situation." *Id.*

Specifically, the raters' description of the incidents of January 23, 2003 interprets Captain Miller's "I cannot work for you" statement in this manner:

> On 23 January 2003, CPT Miller demonstrated his lack of moral obligation to duty. He requested, from 303rd Group Commander, COL Jerry D. De La Cruz, Jr., that he be relieved of the duties and responsibilities as Commander, 739th Engineer Company. He also requested relief from deployment with the unit.

5

AR at 281.  According to this OER, Captain Miller volunteered to be relieved of duty and his request was granted:

> CPT Miller volunteered to be relieved of his command and was unable to carry out command duties.  I directed the Relief for Cause of CPT Miller with the approval of the 88th Regional Support Command Commanding General.

*Id.*  The court now turns to the history of Captain Miller's efforts to obtain redress for what he believes were unjust personnel actions related to his command of the 739th.

## III.   Captain Miller Remains in the Army But Cannot Convince the Army to Remove the Negative OER from His Personnel Folder

Captain Miller went before an investigatory board which met for a full day on July 31, 2004 and which inquired whether the "relief for cause" which removed him from command of the 739th indicated that plaintiff should not be retained in the Army.  AR at 244-46.  The impact of the negative OER on Captain Miller's prospects for promotion was not the concern of the retention board.  *Id.* at 121. The retention board found that there was insufficient evidence regarding almost all of the contentions presented in the negative OER which chronicled the events of January 2003:

> 1.  There is insufficient evidence to support a finding that the Respondent displayed poor judgment and inability to make decisions.
> 2.  There is insufficient evidence to support a finding that the Respondent demonstrated lack of interpersonal and managerial skills in coordinating the actions of his officers and noncommissioned officers at a time of mobilization.
> 3.  There is insufficient evidence to support a finding that the Respondent requested relief from his command in an impending deployment for war.
> 4.  There is insufficient evidence to support a finding

6

> that the Respondent requested to be relieved from his
> command, and/or failed to prepare his command for
> mobilization and deployment during a crucial time as his
> unit prepared for war.

*Id.* at 246.  Ultimately, the retention board recommended that Captain Miller "be retained in the military service and reassigned to a unit not in the [group commanded by one of the raters on his negative OER]." *Id.*  This recommendation was approved by General Michael W. Beasley of the 88th Regional Support Command on October 3, 2004.  *Id.* at 247.  Despite a lack of evidence supporting the OER's derogatory contentions, the negative OER itself remained a part of plaintiff's military record.  *Id.* at 108.

In early 2005 Captain Miller was reassigned to a post in South Carolina and later that year he began a tour of service in Afghanistan.  AR at 273; Compl. ¶ 3.  Although Captain Miller was able to continue with his career in the Army, his efforts to convince the Army to remove the negative OER from his personnel file were not rewarded with success, despite persistent requests for review submitted by plaintiff.  For example, General Beasley reviewed the negative OER in June 2005 and found it to be "complete and correct as written."  AR at 240.

On August 8, 2005, Captain Miller formally appealed the negative OER.  AR at 233.  He alleged that the raters for his OER had demonstrated "the willingness to present false and inaccurate information, even under oath."  *Id.* at 235.  His appeal was assigned "third priority" and took some time to be resolved.  *Id.* at 103.  In the interim, on July 3, 2007, he was notified that he had been passed over for promotion to the rank of major.  *Id.* at 223.

On January 10, 2008, Captain Miller's appeal of the negative OER was denied.  AR at 218.  The denial decision was issued by the Officer Special Review Board (OSRB).  *Id.* at 116.  The OSRB found that "the materials submitted showed the applicant admitted notifying his chain of command that he could no longer work for them.  The [OSRB] found the chain of command agreed with his request and relieved him of his command."  *Id.* at 119.  The OSRB also "failed to find any evidence to support [Captain Miller's] claims that the [negative] OER is not factual and contains false or inaccurate information."  *Id.*

Further, the OSRB discounted the findings of the 2004 investigatory board that found "insufficient evidence" to support the negative OER allegations which might have justified removing Captain Miller from the Army.  According to the OSRB, the role of that investigatory board was "to determine whether an officer should be retained in the service[, not to] investigate other documents or claims." *Id.* at 121.  Overall, the OSRB denied Captain Miller's appeal because the burden of proof was on Captain Miller and because he had failed to overcome the presumption of regularity accorded to the OER.  *Id.*

Undeterred, Captain Miller pursued other avenues of redress.  By late November 2008, he described himself as "a two time non-select [for promotion] to Major, facing a statutory removal from Active Duty on 11 December 2008."  AR at 48.  On November 25, 2008, Captain Miller requested a "commander's inquiry" from his then current commander in Georgia into the validity of the negative OER in his personnel records.  *Id.*  That commander obliged and was supportive of plaintiff's request to remove the negative OER.  *Id.* at 216 (finding the OER to be "invalid" and suggesting that plaintiff appeal his OER).  Unfortunately for Captain Miller, he had already exhausted that avenue of relief.  *See* AR at 20 (suggesting that the appeal of a negative OER to the OSRB was the course of action that would normally have *followed* a commander's inquiry, not *preceded* it).

Captain Miller apparently also asked for a congressional inquiry into his situation.  AR at 23 (application for relief containing plaintiff's assertion that from "2003 thru [late 2009], I have submitted requests for commander's assistance, submitted appeal to [the OSRB], congressional inquiries").  Finally, on December 4, 2009, Captain Miller sought removal of the negative OER from his personnel records by applying for relief from the Army Board for Correction of Military Records (ABCMR or Board).[3]  *See id.* Tab 6.  Before the ABCMR rendered its decision, plaintiff was promoted to major on June 3, 2010.  *Id.* at 186.  The substance of his application for relief, and the decision of the ABCMR which was communicated to plaintiff on November 23, 2010, will be discussed in detail in the analysis section of this opinion.  The ABCMR denied all relief to plaintiff.

## IV.   Complaint and Motion to Supplement the Administrative Record

---

[3]/ Captain Miller had approached the ABCMR twice before, on different matters.  Those appeals contested what he regarded as tardy promotions to a higher rank.  *See* AR Tabs 9-13.

Plaintiff filed a complaint in this court on January 2, 2014. Once defendant had filed a motion to dismiss all counts of the complaint based on both jurisdictional grounds as well as on the administrative record, plaintiff filed a motion for leave to supplement the administrative record with Exhibit A which was attached to plaintiff's complaint. This exhibit is the Revocation Order discussed *supra*, which on January 22, 2003 revoked the order mobilizing Captain Miller for a tour in Iraq. Plaintiff's motion will be resolved in the analysis section of this opinion.

## DISCUSSION

### I.    Standards of Review

#### A.    RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

It is important not to confuse jurisdiction with justiciability, particularly in military pay cases. *See, e.g.*, *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (noting that "[j]usticiability is distinct from jurisdiction" and commenting that "[j]usticiability is a particularly apt inquiry when one seeks review of military activities") (citation omitted). Even if a military pay controversy is within this court's jurisdiction, it may not be justiciable – there may be no relief that the court can devise without intruding into the military's particular sphere of responsibility. *Id.* (citing *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)). The inquiry into justiciability is generally thought to fall more

under RCFC 12(b)(6) than under RCFC 12(b)(1), although this is the subject of some dispute. *See, e.g.*, *Cameron v. United States*, 106 Fed. Cl. 551, 559 (2012) ("Where a claim is nonjusticiable, the appropriate action is for a court to dismiss the claim for failure to state a claim upon which relief can be granted." (citing *Murphy*, 993 F.2d at 872)), *rev'd on other grounds*, 550 F. App'x 867 (Fed. Cir. 2013); *Gallucci v. United States*, 41 Fed. Cl. 631, 645 (1998) (dismissing a nonjusticiable military claim for failure to state a claim); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (stating that "courts will refuse on jurisprudential grounds to review [nonjusticiable military] decisions, even if the court has jurisdiction to do so"). *But see Spellissy v. United States*, 103 Fed. Cl. 274, 276 n.1 (2012) (noting that this court's caselaw is not clear as to whether the justiciability inquiry falls under RCFC 12(b)(1) or RCFC 12(b)(6)).

### B.    RCFC 12(b)(6)

When considering a motion to dismiss under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236.  The court must inquire, however, whether the complaint meets the "plausibility" standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007) (citations omitted).  Plausibility is a context-specific inquiry. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*Iqbal*) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citation omitted).  It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay*, 295 F.3d at 1257.

### C.    RCFC 52.1(c)

RCFC 52.1(c) provides for judgment on the administrative record.  To review a motion under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  The court must make fact findings where necessary. *Id.*  The resolution of a motion filed under RCFC 52.1(c) is akin to an expedited trial on

10

the paper record. *Id.*

### D.    Review of Decisions of Military Records Correction Boards

The court does not review the issue before a board for correction of military records *de novo*; rather, this court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). Plaintiff's burden is to show by "'cogent and clearly convincing evidence'" that the decision of the board fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). Plaintiff must also overcome the presumption of regularity which attaches to the actions of the board. *See, e.g.*, *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011) ("We . . . presume that the Correction Board performed its function according to the regulations and considered all of the [applicant's] records.") (citations omitted); *Armstrong v. United States*, 205 Ct. Cl. 754, 762-63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary) (citations omitted).

Although many formulations of the arbitrary and capricious standard of review exist, when the standard is applied to military pay cases in this circuit the court is largely concerned with whether the corrections board's decision is procedurally fair and supported by substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1156 & n.12 (Fed. Cir. 1983) (citation omitted). The corrections board's decision must also be sufficiently detailed for the court to ascertain the reasoning behind the denial of relief to the applicant. *See Buchanan v. United States*, 621 F.2d 373, 383 (Ct. Cl. 1980) ("The burden that would be placed upon plaintiff in this court would be almost impossible if the correction board were permitted . . . to cast aside the issues without discussion or reason and merely state that insufficient evidence has been presented to indicate probable injustice or material error."). The court must additionally consider whether the corrections board has failed to correct "plain legal error." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citations omitted).

The court also considers whether an injustice has occurred, because "'when

a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate.'" *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)). In cases of clear injustice, the board has a moral duty to "'take steps to grant thorough and fitting relief.'" *Id.* (quoting *Caddington v. United States*, 178 F. Supp. 604, 607 (Ct. Cl. 1959)). When a board does not act to redress clear injustice, its decision is arbitrary and capricious and must be overturned upon review by this court. *Yee*, 512 F.2d at 1387 (citing *Skaradowski v. United States*, 471 F.2d 627 (Ct. Cl. 1973) and *Duhon v. United States*, 461 F.2d 1278 (Ct. Cl. 1972)).

### E.     Supplementation of the Administrative Record

In *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), the United States Court of Appeals for the Federal Circuit identified the acceptable circumstances under which an administrative record may be supplemented. The *Axiom* panel criticized a decision of this court which permitted supplementation of the administrative record in a bid protest, and criticized the trial court's over-broad reliance on *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), an opinion which provides a list of justifications for the supplementation of the administrative record of an agency action. *Axiom*, 564 F.3d at 1379-81. *Axiom*, the seminal case on record supplementation in this circuit, is precedent binding on this court.

The court notes that the *Axiom* panel adopted a restrictive standard for supplementation of the administrative record, and favorably cited *Murakami v. United States*, 46 Fed. Cl. 731 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). *Axiom*, 564 F.3d at 1380. The *Axiom* standard for supplementation of the administrative record is a direct quotation from *Murakami*, stating that "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735). The Federal Circuit relied on the cases cited by this court in *Murakami* to conclude that "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735 and citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (*Florida Power*); *Camp v. Pitts*, 411 U.S.

138, 142 (1973)).  The thrust of the *Axiom* decision, and *Murakami*, is that this court must exercise restraint when considering whether or not to supplement the administrative record.  *See id.* (favoring a "more restrictive approach" and questioning the vitality of *Esch*) (citations omitted); *Murakami*, 46 Fed. Cl. at 735 (stating that the construction of the *Esch* justifications for allowing supplementation of an administrative record should be "'extremely limited'") (citations omitted).

In military pay cases before this court, an alternative to supplementation of the administrative record is to remand the case to the corrections board whose decision is being reviewed, so that the board may render a decision on a complete record.  *E.g.*, *Frey v. United States*, 112 Fed. Cl. 337, 348 (2013); *Albino v. United States*, 93 Fed. Cl. 405, 409 (2010); *Riser v. United States*, 93 Fed. Cl. 212, 218 (2010).  Probative evidence proffered by a military pay plaintiff to supplement the administrative record of board proceedings should, as a general rule, trigger a remand from this court to the corrections board.  *See, e.g.*, *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Florida Power*, 470 U.S. at 744)).  *But see Joslyn v. United States*, 110 Fed. Cl. 372, 388 (2013) (detecting some tension between the statement of the law in *Walls* and prior precedent permitting the consideration of new evidence in military pay cases).  There are, nonetheless, exceptional circumstances where the court may consider new evidence that was not before the corrections board, *Walls*, 582 F.3d at 1368 n.13 (citing *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006)), particularly where bad faith or bias is alleged to have tainted the proceedings under review, *Joslyn*, 110 Fed. Cl. at 388; *Riser*, 93 Fed. Cl. at 217-18.  In any case, remand is not required when the material proffered to supplement the administrative record is not probative.  *E.g.*, *Holmes v. United States*, 98 Fed. Cl. 767, 780 (2011).

## II.    Analysis

Major Miller requested three general types of relief from the ABCMR: (1) he asked that the negative OER be removed from his file (to be replaced by a notice that this period of time was unrated); (2) he asked that his record be re-submitted for consideration for major among the 2006 candidates for promotion to major; and, (3) he asked that his promotion year be corrected (apparently to 2006).

13

AR at 22.  Among many grounds for relief, the record before the ABCMR showed that plaintiff alleged that he had been the subject of bias, reprisal and retribution. *Id.* at 28, 39, 42, 60.  According to plaintiff, one of the key facts in January 2003 was that the group commander seized upon plaintiff's "I cannot work for you" statement and used that to support his statement in the negative OER that plaintiff volunteered to be relieved of his command and to not deploy to Iraq. *Id.* at 23, 48-49.

The ABCMR was not persuaded by the evidence before it that the version of events in the negative OER was untrue or incorrect.  The issue of possible bias and retaliation against Captain Miller was noted, AR at 16, but was not discussed in the Board's analysis of his claims.  The Board mentioned the requirement that clear and convincing evidence be proffered to overturn a negative OER. *Id.* at 17. The Board recounted the investigations that had reviewed the negative OER and surrounding circumstances.  The Board found that "the weight of evidence supports the determination of the rater, senior rater, and the first [General Officer] in the chain of command, all of whom contend [plaintiff] did not perform to standard and lacked leadership and sound judgment." *Id.* at 19.  In the end, the ABCMR agreed with the OSRB that the negative OER was valid and should remain in Major Miller's personnel file. *Id.* at 20.

The Revocation Order dated January 22, 2003 is not mentioned in the ABCMR's report.  Certainly, Major Miller did not mention the order in his application for relief, and it is does not appear that the order was present in the records before the ABCMR. *See* AR at 12-19 (omitting any mention of the Revocation Order among the evidence considered by the Board).  Any specific reference to the events of January 2003 focuses on the events of January 23, 2003, when plaintiff made his "I cannot work for you" statement, *see* AR at 11-16, 19-20, and not on the events of January 22, 2003, the previous day, when his commanders appear to have revoked his orders to deploy to Iraq.  Further, there is no analysis of how the Board weighed criticisms of plaintiff's work performance, as compared to how the Board weighed plaintiff's alleged requests to be relieved of his command and to be excused from deployment to Iraq.  It is unclear whether the Board's finding that the negative OER was valid would survive a deeper analysis into the events of January 2003 which would include the Revocation Order as relevant evidence.

There are six counts in the complaint filed by Major Miller, which will be discussed in more detail *infra*. Plaintiff contests the procedural fairness of the ABCMR proceedings and seeks monetary damages of $90,000, retroactive promotion to major (in 2006 instead of in 2010), retroactive promotion to lieutenant colonel (in 2010), removal of the negative OER from his personnel records, additional pay, and attorney's fees. Compl. at 9-11. The court now turns to a review of the jurisdictional challenges to Major Miller's claims raised by defendant.[4] Once the jurisdictional challenges have been resolved, the court will turn to defendant's arguments brought pursuant to RCFC 12(b)(6) and those requesting judgment on the administrative record pursuant to RCFC 52.1.

## A.    Jurisdiction

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, "does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citation omitted). A plaintiff coming before the United States Court of Federal Claims, therefore, must also identify a separate provision of law conferring a substantive right for money damages against the United States. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (citing *Testan*, 424 U.S. at 398). Further, except in circumstances not relevant here, the United States Court of Federal Claims may consider nonmonetary claims only if they are tied and subordinate to a claim for money damages. *See, e.g.*, *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988) (citing cases).

## 1.    Count I – APA Claim

The first count in the complaint relies on the Administrative Procedure Act,

---

[4]/ The court's discussion, like defendant's motion, does not follow the order of counts presented in the complaint.

5 U.S.C. §§ 701, 706 (2012) (APA).  Compl. at 9.  Defendant argues, and plaintiff does not refute, that this court lacks jurisdiction for claims brought under the APA. Def.'s Mot. at 5.  The court agrees that it lacks jurisdiction over Count I of the complaint.  *See, e.g.*, *Murphy*, 993 F.2d at 874 (stating that the "Claims Court has no authority to invoke the APA"); *Russell v. United States*, 78 Fed. Cl. 281, 288 (2007) (noting that "the APA confers jurisdiction for judicial review of final agency decisions on the United States district court and not the Court of Federal Claims") (citations omitted).  Count I must be dismissed.

## 2.      Count III – Correction of Military Records

The third count in the complaint relies upon the statute providing for the correction of military records, 10 U.S.C. § 1552 (2012).  Compl. at 10.  It is well-established that this statute is not money-mandating so as to support jurisdiction for suits brought before this court.  *See, e.g.*, *Lewis v. United States*, 458 F.3d 1372, 1376 n.3 (Fed. Cir. 2006) (citing *Martinez v. United States*, 333 F.3d 1295, 1315 (2003) (*en banc*)).  Because section 1552 is not a money-mandating statute for plaintiff's claims, Count III must be dismissed.

## 3.      Count IV –  Retaliatory Personnel Action Claim

To support Count IV of the complaint, plaintiff relies upon 10 U.S.C. § 1034 (2012), which addresses the issue of retaliatory personnel actions in the military.  Compl. at 10.  Defendant argues that this whistleblower protection statute is not money-mandating, citing *Gant v. United States*, 63 Fed. Cl. 311, 316 (2004).  Def.'s Mot. at 6.  Plaintiff does not refute this authority, and recent cases confirm that this court lacks jurisdiction over section 1034 claims.  *E.g.*, *Volk v. United States*, 111 Fed. Cl. 313, 326 (2013) (citation omitted).  Because section 1034 is not a money-mandating statute for plaintiff's claims, Count IV must also be dismissed.

## 4.      Count V – Due Process Claim

The fifth count in the complaint relies upon the due process guarantees of the United States Constitution.  Compl. at 10-11.  It is well-settled that these due process guarantees are not money-mandating sources of law to support military pay claims.  *See, e.g.*, *Volk*, 111 Fed. Cl. at 326 (citation omitted).  For this reason,

Count V must also be dismissed.

### 5.    Count VI – Tucker Act Claim

Count VI of the complaint is described as a claim founded on the Tucker Act, 28 U.S.C. § 1491.  Compl. at 11.  Defendant argues that because the Tucker Act serves as this court's jurisdictional statute, it cannot also serve as a separate and distinct money-mandating statute which could support military pay or equitable claims.  Def.'s Mot. at 3 n.2, 5.  Defendant is correct.  *See, e.g.*, *Collins v. United States*, 67 F.3d 284, 286 (Fed. Cir. 1995) ("Since the Tucker Act does not mandate the payment of plaintiff's alleged damages, to recover he must base his claim on some other statute that creates a substantive right by mandating the payment of his claim.").  For this reason, Count VI of the complaint must also be dismissed.

### 6.    Count II – Military Pay Act Claim

Plaintiff's reliance on the Military Pay Act, 37 U.S.C. §§ 201, 204 (2012), for Count II of the complaint is not misplaced, however.  Compl. ¶ 4; *id.* at 9-10.  Defendant argues that a claim for military pay which depends on a court-ordered promotion is beyond the jurisdiction of this court under the Military Pay Act.  Def.'s Mot. at 7-8.  Defendant relies on heavily on *Smith v. Sec'y of Army*, 384 F.3d 1288 (Fed. Cir. 2004) for its jurisdictional analysis of certain Military Pay Act claims.[5]  The court believes, however, that the holding in *Smith* has been

---

[5]/  *Smith* frames the jurisdictional inquiry as requiring more than a money-mandating statute    the statute must be money-mandating and must also be money-mandating under the particular circumstances of the plaintiff's case:

> It is well established that the Military Pay Act is a money-mandating statute.  *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).  The question remains, however, whether the Military Pay Act could provide a monetary remedy under the circumstances of this case.

384 F.3d at 1294.  As discussed *infra*, this is no longer the jurisdictional inquiry embraced by the Federal Circuit.

(continued...)

eroded by the Federal Circuit's more recent decision in *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) (*en banc* in relevant part).  *See Tippett v. United States*, 98 Fed. Cl. 171, 179 n.10 (2011) (suggesting that the jurisdictional analysis in *Smith* is suspect in light of the change in this court's test for jurisdiction established by *Fisher*).

Claims for back pay based on the Military Pay Act are generally considered to be within the jurisdiction of this court.  *Metz*, 466 F.3d at 998.  Although defendant suggests that promotion-related claims are outside the ambit of the Military Pay Act, Def.'s Mot. at 7, this type of two-step jurisdictional analysis (despite a generally money-mandating statute, requiring a second step to ensure that certain plaintiffs are included within the scope of the statute) was foreclosed by *Fisher*.  In determining its jurisdiction over a suit, the money-mandating nature of a statute is determined by this court, at the outset, without regard as to whether a particular set of facts justifies compensation under the statute.  *See Fisher*, 402 F.3d at 1173 ("The single step would be one in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy.").  As the non-*en banc* portion of *Fisher* commented:

> Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this:  plaintiff loses on the merits for failing to state a claim on which relief can be granted.

*Id.* at 1175-76.  Thus, Major Miller's claim in Count II, founded on the Military Pay Act, survives defendant's jurisdictional challenge.[6]

---

[5](...continued)

[6]/ Although plaintiff has distributed the various forms of relief sought in his suit among
(continued...)

18

### B.    Failure to State a Claim

Three of defendant's arguments for dismissal may properly be classified as arguments that should be addressed under the standard of review for RCFC 12(b)(6).  The first is the government's contention that Major Miller's Military Pay Act claim is non-justiciable because it requests a court-ordered promotion.  Def.'s Mot. at 8-9; Def.'s Reply at 5.  The second argument is that Major Miller has offered no allegations of fact that would bring his suit within the type of promotion case where a "clear-cut entitlement to promotion" could possibly exist.  Def.'s Mot. at 8 n.4; Def.'s Reply at 2-3.  Finally, defendant argues that because Major Miller's suit attacks the merits of the Army's decision not to promote him to major in 2006, and does not challenge the procedure followed by the Army, the complaint fails to state a claim upon which relief can be granted.  Def.'s Mot. at 9.  The court addresses each argument in turn.

### 1.    Justiciability

It is well-settled that the promotion of military officers is not a power granted this court.  *See, e.g.*, *Lewis*, 458 F.3d at 1378 (noting that this court cannot order the President to promote a military officer) (citations omitted); *Selman v. United States*, 498 F.2d 1354, 1359 (Ct. Cl. 1974) (citing *Brenner v. United States*, 202 Ct. Cl. 678, 685-86 (1973)).  Indeed, the selection of officers for promotion is a type of substantive decision by a military branch that is frequently described as non-justiciable.  *See, e.g.*, *Lindsay*, 295 F.3d at 1257 ("Judgments made by military officials or administrative bodies that a particular officer does not merit promotion or retention fall into this category, and courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so.").  The court must therefore agree with defendant that Major Miller's request for retroactive promotion to major and to lieutenant colonel fails to state a claim upon which relief can be granted.  *See* Compl. at 11 ("That Miller be

---

[6](...continued)
the six counts of the complaint, the court reads the complaint, and particularly the prayer for relief in the complaint, to request several types of relief that can all be tied to his Military Pay Act claim in Count II.  Thus, the dismissal of Counts I, III, IV, V and VI removes extraneous allegations of sources of law that cannot support jurisdiction in this court, but does not address or dismiss plaintiff's various requested forms of relief.  Those aspects of the complaint are discussed *infra*.

retroactively promoted to Major as of 2006; and Lieutenant Colonel as of 2010[.]").  This request for relief must be dismissed under RCFC 12(b)(6).

## 2.   Clear-Cut Right to Promotion

Defendant notes that there is an exception to the bar on military promotion claims proceeding in this court, but notes that these exceptional cases all rely on a fact pattern where a promotion has commenced but has later been interrupted. Def.'s Mot. at 8 n.4; Def.'s Reply at 3.  Perhaps the best example for this exception is *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).  In *Dysart*, although the plaintiff was ultimately unsuccessful in obtaining the desired promotion or the pay of the higher rank, the Federal Circuit acknowledged that certain promotion decisions, once made but only partially implemented, could be the subject of a proper promotion claim.  *Id.* (noting that "redress may be afforded for a promotion improperly denied [because] [i]t is apparently assumed that the constitutionally-mandated steps in the appointment process – nomination, confirmation, and actual appointment – would be followed absent improper action by subordinate officials") (citations omitted).

Defendant asserts, and the complaint confirms, that no interrupted promotion process in 2006 is alleged to support Major Miller's claim for a "clear-cut" entitlement to promotion.  Because the claim in this case is founded on the more typical scenario of non-selection for promotion, the exception found in cases such as *Dysart* does not apply.  Dismissal of plaintiff's promotion claim is therefore warranted under RCFC 12(b)(6).

## 3.   Procedural Challenge to the Army's Decision Not to Promote Major Miller Adequately States a Claim

Finally, defendant suggests that because this suit attacks the merits of the Army's decision not to promote plaintiff in 2006, and does not challenge any procedural infirmity in the promotion process, it presents a non-justiciable issue. Def.'s Reply at 5.  If the government's analysis of the complaint is correct, plaintiff fails to state a claim upon which relief may be granted and Major Miller's Military Pay Act claim must be dismissed.  According to the government,

MAJ Miller does not attack the procedure in the Army's

20

> decision to delay his promotion.  Instead, MAJ Miller
> invites the Court to second-guess the Army's
> determination, and speculate that a single negative OER
> resulted in his being bypassed for promotions on two
> occasions.

Def.'s Mot. at 9 (citing Compl. ¶¶ 54-55).

There is ample precedent which holds that this court may not review the merits of military promotion decisions.  *See, e.g.*, *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) ("The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review.") (citations omitted).  Where, however, a plaintiff seeks review "not of the substance of a military decision, but instead its compliance with an applicable statute or regulation," this court may review a military promotion decision for procedural error.  *Lindsay*, 295 F.3d at 1257; *see also Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007) (noting that the Federal Circuit has "recognized that courts can evaluate whether the military follows the procedures mandated by statute or by its own regulations when making promotion decisions" (citing *Lewis*, 458 F.3d at 1377; *Dysart*, 369 F.3d at 1315)).  Further, once a service-member has had recourse to a corrections board, the focus is both on the procedural infirmity alleged before the board, as well as on a review of the board's decision under the arbitrary and capricious standard.  *E.g.*, *Lewis*, 458 F.3d at 1376; *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003).

It is certainly true that the complaint invites a review of the merits of Major Miller's non-selection for promotion prior to 2010.  Compl. ¶¶ 54-55.  But it is also true that the complaint identifies a procedural flaw in all of the reviews the Army conducted of the disputed incidents of January 2003:  the omission of later disclosed relevant evidence from consideration because the January 22, 2003 Revocation Order never, apparently, surfaced until a FOIA request from plaintiff's counsel unearthed it in late September 2013.  AR at 1.  There is no indication that this relevant evidence was considered by General Beasley, the OSRB, or the ABCMR.  *Id.* at 240, Tabs 5-6, 8.

Thus, the court sees a procedural issue inherent in the Military Pay Act claim presented in the complaint, even if the procedural challenge is somewhat

obliquely stated.  *See* Compl. ¶ 45 (stating that "[t]he OSRB did not address Miller's credible claim that he was the object of retaliation and reprisal"), ¶ 48 ("The ABCMR also found Miller told his superiors 'he could not serve them' and they obliged him by relieving him of his command, . . . contrary to the order revoking Miller's deployment order made one day *prior* to the alleged comments."), ¶ 49 ("The ABCMR did not address Miller's credible claim that he was the object of retaliation and reprisal . . . ."), ¶ 59 ("By taking unfavorable personnel actions against Miller as reprisal for communicating to persons in his chain of command reports of what he reasonably believed were violations of the law and/or Army regulations, the Defendant violated [the whistleblower protection statute]."); Pl.'s Opp. at 16 (arguing that the Revocation Order is evidence that plaintiff's being relieved from command on January 23, 2003 was pretextual and that the negative OER was substantively inaccurate); Pl.'s Supp. Mot. at 2 ("The ABCMR affirmed [that plaintiff's superiors granted his request to be relieved from duty]; however, it did not have the Revocation Order to consider because it was not part of the record for unknown reasons."); *id.* at 3 (stating that "the ABCMR failed to consider factors which are relevant to its final decision").  These allegations present a claim for military pay not received due to a flawed promotion procedure that included flawed reviews by both the OSRB and the ABCMR.  *See, e.g.*, *Hoskins v. United States*, 61 Fed. Cl. 209, 218 (2004) (finding that because a military pay plaintiff argued that her promotion records were incomplete, "the court is able . . . to discern a [justiciable] procedural challenge in [the] plaintiff's claims").

Defendant argues that the Revocation Order is of "questionable probative value."  Def.'s Supp. Resp. at 3.  At the pleadings stage, however, the court must accord all favorable inferences to the facts presented in the complaint.  *Scheuer*, 416 U.S. at 236.  The court also does not find plaintiff's allegations of retaliation and bias to fail the plausibility test outlined in *Twombly* and *Iqbal*.  Because Major Miller has requested monetary relief under the Military Pay Act, and ancillary equitable relief, the court denies defendant's 12(b)(6) challenge to the complaint.[7]

_____

[7]/ The court's consideration of the complaint in this section of the opinion has included reference to the factual background provided by the AR to provide a context for plaintiff's procedural challenge to the ABCMR's denial of his application for relief.  Plaintiff's Military Pay Act claim, however, would survive defendant's arguments that the complaint fails to state a claim upon which relief can be granted even without reference to such materials.  *Holmes*, 98

(continued...)

*See, e.g., Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("It is no longer subject to debate whether a Tucker Act claim may be stated for military back pay and ancillary relief.").

Major Miller's request for monetary relief was more fully expressed in his application for relief submitted to the ABCMR. There, he asked that his corrected military record be submitted for retroactive consideration for promotion to major as of 2006, and that his rank be adjusted to major, presumably as of 2006. Neither of these requests is beyond the power of a corrections board, and if a retroactive promotion were to be approved, Major Miller would receive a considerable amount of back pay. That request for monetary relief is again stated in the complaint before this court, although plaintiff has neglected to request a remand to the ABCMR to accomplish his goals of retroactive promotion and back pay. Compl. at 11. Because Major Miller requests correction of his military records, asserting that "the ABCMR's actions were arbitrary and capricious and are properly subject [to] judicial review," *id.* at 10, the court deems this to be a remand request and a request for monetary relief sufficient to state a claim upon which relief can be granted, *id.* at 11 (requesting "all further relief which this . . . Court deems just and appropriate").

### C.   Defendant's Request for Judgment on the Administrative Record and Plaintiff's Motion for Supplementation of the Administrative Record

Defendant has moved for judgment on the administrative record, arguing that, on this record, the ABCMR decision should survive review. In particular, the government asserts that "the ABCMR reasonably found that MAJ Miller 'told his superiors he could not serve them and they obliged him by relieving him of his command.'" Def.'s Mot. at 13 (quoting AR at 20). Plaintiff disputes the government's analysis but also protests that, "[a]t a minimum, the case should be remanded to the ABCMR to reconsider its decision in light of the Revocation Order." Pl.'s Supp. Reply at 2.

---

[7](...continued)
Fed. Cl. at 780 n.10 (noting that exhibits to a complaint, such as Exhibit A in this case, "are properly considered in ruling on the government's motion to dismiss [in a military pay case]").

The court believes that such a remand would afford the ABCMR an opportunity to revisit and reevaluate its decision in a troubling case. Plaintiff has repeatedly asserted that he never volunteered to be relieved of his command or volunteered to avoid deployment to Iraq. Instead, he contends that he told his commander that he could not work for him if that commander continued to disrespect him with profanity (in front of his company). The Board was apparently convinced, because of the presumption of regularity afforded military records in the absence of contrary evidence, that it should accept the version of events provided by plaintiff's superior officer – that plaintiff simply said he would not work for his superior and then volunteered to relinquish his command. The belated resurfacing of the Revocation Order, with its content and timing, appears to be clearly relevant for the purposes of the ABCMR's re-evaluation of the validity of the statements in the negative OER.

Because the court finds the Revocation Order to be probative, the court believes that a remand to the ABCMR is appropriate. *Walls*, 582 F.3d at 1367. The court therefore denies defendant's request for judgment on the administrative record as moot. Plaintiff's motion to supplement the administrative record is also moot because remand is the more appropriate option.

## CONCLUSION

Counts I, III, IV, V and VI of the complaint are dismissed without prejudice for lack of subject matter jurisdiction, as stated in this opinion. Plaintiff's request for a court-ordered promotion or promotions, his claim to a clear-cut entitlement to promotion, and his challenge to the merits of his non-selection for promotion are all dismissed with prejudice for failure to state a claim upon which relief can be granted. Defendant's request for judgment on the administrative record and plaintiff's motion for supplementation of the administrative record are denied as moot, because plaintiff's Military Pay Act claim in Count II, and his requests for ancillary relief, must be remanded to the ABCMR.

For the foregoing reasons, it is hereby **ORDERED** that:

(1)     Defendant's Motion to Dismiss, Or, in the Alternative, Motion for Judgment Upon the Administrative Record, filed May 23, 2014, is **GRANTED** in part as to

24

(a) **Counts I, III, IV, V and VI** of the complaint, which are **DISMISSED** without prejudice for lack of subject matter jurisdiction;

(b) Plaintiff's request for a court-ordered promotion or promotions, his claim to a clear-cut entitlement to promotion, and his challenge to the merits of his non-selection for promotion, which are all **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted;

and **DENIED** in part as to

(c) Dismissal of **Count II** of the complaint under either RCFC 12(b)(1) or RCFC 12(b)(6);

(d) Defendant's request for judgment on the administrative record, which is **DENIED** as moot;

(2) Plaintiff's Motion to Supplement the Administrative Record, filed September 5, 2014, is **DENIED** as moot;

(3) Pursuant to RCFC 52.2(a) and 28 U.S.C. § 1491(a)(2), plaintiff's Military Pay Act claim (as set forth in Count II) and his requests for ancillary relief are hereby **REMANDED** to the **U.S. Secretary of the Army**, acting through the Army Board for Correction of Military Records, so that the Board may have an opportunity to revisit and articulate in detail its rationale on the subject matter.

(4) The Board's decision shall, *inter alia*, address the following issues after affording Major Miller the opportunity to amend his application for relief submitted December 4, 2009 to include the Revocation Order dated January 22, 2003 and claims based thereon:

(a) Consider Major Miller's claim that the Revocation Order dated January 22, 2003 shows that his negative OER for the period June 29, 2002 through January 23, 2003 was substantially inaccurate and that this OER should be removed from his

25

personnel file;

 (b) Consider any claims of bias and retaliation made by Major Miller; and

 (c) Consider whether special selection boards would offer Major Miller appropriate relief if the negative OER is removed from his personnel file and this period of service is noted as unrated.

(5) Defendant is directed to **FILE** a **Status Report**, on or before **April 27, 2015**, and every 90-day interval thereafter, indicating the status of proceedings on remand, pursuant to RCFC 52.2(b)(1)(D).

(6) The **agency decision** on remand shall be **FILED** by defendant with this court on or before **July 27, 2015**.

/s/Lynn J. Bush_____
LYNN J. BUSH
Senior Judge